**Wayne TAYLOR, Jr., Chairman of the Hopi Tribal Council, Plaintiff–Appellant,**

v.

**Kelsey BEGAY, President of the Navajo Nation, Defendant– Appellee.**

**No. 00–17279.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 26, 2001.

Filed Aug. 12, 2002.

Tim Atkeson and Timothy R. Mac-Donald, Arnold & Porter, Denver, CO, for the plaintiff-appellant.

James M. Balogh and Dale S. Zeitlin, Zeitlin & Zeitlin, Phoenix, AZ, for the defendant-appellee.

Before SCHROEDER, Chief Judge, B. FLETCHER and RYMER, Circuit Judges.

SCHROEDER, Chief Judge.

This appeal concerns a very narrow portion of our opinion in *Masayesva v. Hale* that dealt with the extent of the Navajo Tribe's obligation to pay owelty to the Hopi Tribe. *Masayesva v. Hale*, 118 F.3d 1371 (9th Cir.1997). We there remanded for the district court, among other things, to determine the extent to which the existence of improvements on the Navajo land enhanced the value of the land itself. *Id.* at 1380.

The facts in this epic and tragic history of the Navajo–Hopi occupation of joint land are contained in our earlier opinion. *Id.* at 1375–76. We do not repeat them here.

The land partitioned to the Navajo had a variety of improvements upon it, none of which were owned by the tribe. We remanded to the district court for additional proceedings to determine whether the existence of the improvements on the land enhanced the value of the land itself. *Id.* at 1382. The Hopi now appeal from the

district court's ruling that the value of the land was not enhanced as a result of any of the improvements.

■ We conclude that the district court did not err in finding that the schools, chapter houses, medical facility, and airstrip on the Navajo partitioned land added no value to the land itself. As we held in our prior opinion, because those facilities are not owned by the tribe, their contributing value cannot be calculated by determining the value of the facilities themselves. *Id.* at 1381. Rather, in determining whether any owelty is due, the court can only examine "the land's enhanced value because those improvements are on it." *Id.* The Hopi's expert calculated the value of those improvements by determining their replacement cost and reducing that amount to account for depreciation over the life of the structures. This is precisely the methodology deemed inappropriate by this court.

■ The only problem with the district court's decision is in connection with the trading posts. The district court, relying on the Navajo expert's testimony, found that the entire value of each of the nine trading posts in the former Joint Use Area, all of which were partitioned to the Navajo, was incorporated into the value of the underlying land. The Navajo expert, however, did not testify that the value of the trading posts was inherent in the land. The Navajo expert testified that the value of the schools, chapter houses, medical facility, and airstrip was inherent in the land, but calculated the value of the trading posts by examining their income and capitalizing that income over a period of years. The Hopi expert used the same method. The district court's finding with regard to the trading posts would ignore the fact, testified to by both experts, that the trading posts provide income to the owner of the leased land on which they sit. The Navajo, who received all nine of the

trading posts in the partition, have received all of this income, and the Hopi none. The Hopi are therefore entitled to owelty on this basis.

■ On appeal, the Navajo contend that if the district court is ordered to reexamine the value of the trading posts, the district court should allow the Navajo to present evidence concerning the current status of the trading posts, some of which may have ceased to function since partition. However, the issue in this case is not the current value of the partitioned land, but the value of that land at the time of its partition in 1979, and whether there was any difference in the value of the partitioned pieces at that time necessitating the payment of owelty. Subsequent closures of the trading posts, or other changes to the partitioned land, are not relevant to its 1979 value. Further evidentiary proceedings should not be necessary.

We remand for an award of owelty to the Hopi to compensate for the partition of the nine trading posts to the Navajo.

REVERSED and REMANDED.